JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Richard Selman appeals from his conviction on one count of domestic violence. He complains that counsel acted ineffectively by failing to raise self-defense, that the state erred by asking questions about prior convictions even though the parties stipulated to those prior convictions before trial, and that the evidence was insufficient to establish the elements of domestic violence. We find no error and affirm.
 {¶ 2} The victim was Selman's mother. She testified that Selman lived with her and her husband, but did not work. On the day of the incident, she arrived home from work and Selman asked her to drive him to a friend's house because he was "going to stay there for a while." She agreed and they set off, but turned back when Selman discovered that he forgot his wallet. At that point, the mother realized that Selman had not packed any clothes for an extended stay. When she asked him about it, Selman said, "I am going to Larry's to say goodbye and then I am going to kill myself." They arrived back at the mother's house and Selman started yelling and screaming. The mother tried to use her cell phone to call the police, but Selman struck her in the face, knocking off her glasses. He then pushed her in the chest and ripped the telephone from the wall. The mother ran outside and tried to call the police with her cell phone. He again struck her in the face and pushed her to the ground, causing the cell phone to *Page 2 
fall and break. Selman then called the police and told them that his mother had assaulted him.
 {¶ 3} The police arrived and saw the mother sitting in the driveway looking distressed and Selman sitting on the porch smoking a cigarette. An officer noted that the mother "was in pain," while Selman showed no visible injuries and appeared to be in no disarray. Selman told the police that he was going to his friend's house to "say goodbye." He said that he planned to sell his laptop computer to raise money to buy a gram of heroin that he would inject into himself as a means of committing suicide. The police transported him to a hospital for observation.
 {¶ 4} The police transported the mother to a different hospital where she was treated for a neck sprain. Another officer found the pieces of the mother's broken cell phone and her eyeglasses, and saw that a telephone inside the house had been ripped from the wall. The police later took photographs of the mother's face. These photographs showed bruising on her cheek.
 I {¶ 5} Selman's first assignment of error is that counsel was ineffective for failing to raise self-defense even though mentioning it in his opening statement.
 {¶ 6} In order to successfully assert ineffective assistance of counsel, a defendant must show not only that the attorney made errors so serious that he *Page 3 
was not functioning as "counsel," as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive him of a fair and reliable trial. Strickland v. Washington (1984),466 U.S. 668, 687. This requires a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client and a determination as to whether the defense was prejudiced by counsel's ineffectiveness. State v. Bradley (1989),42 Ohio St.3d 136, 141-142.
 {¶ 7} When counsel is alleged to have employed erroneous or dubious trial strategy, we employ a highly deferential standard of review because a reviewing court "must refrain from second-guessing the strategic decisions of trial counsel." State v. Carter,72 Ohio St.3d 545, 558, 1995-Ohio-104. The criminal defendant "must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.
 {¶ 8} In State v. Barnes, 94 Ohio St.3d 21, 24, 2002-Ohio-68, the supreme court set forth the elements of self-defense: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. Self-defense is an affirmative defense and R.C. 2901.05(A) places the *Page 4 
burden of proving this affirmative defense on the accused. The standard for whether a criminal defendant has successfully raised an affirmative defense is "whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable persons concerning the existence of such issue." State v. Melchior
(1978), 56 Ohio St.2d 15, paragraph one of the syllabus.
 {¶ 9} During opening statement in this bench trial, Selman's counsel told the court "[t]his is not a case of domestic violence. This is a case of self-defense." Counsel then told the court that the mother had initially pushed Selman and that he "defended himself." As the state's evidence developed, however, it became apparent that Selman had reacted so violently that he was at fault in creating the situation. Moreover, even if there had been evidence that the mother provoked him, reasonable minds could not find that he was in imminent danger that justified the use of force. Selman was 28 years old at the time, while his mother was 61. His physical superiority over her was demonstated by the bruising he caused after striking her in the face and then knocking her to the ground. The after-affects of this outburst were substantiated by the police in the form of a broken cell phone and the telephone that had been ripped from the wall inside the home. *Page 5 
 {¶ 10} In the face of this evidence, we cannot second-guess counsel's decision to abandon self-defense as a trial strategy. Pursuit of that affirmative defense would have required Selman to testify, and it would have made his two prior convictions fair comment for the state in cross-examination. Given the violent nature of the offense and Selman's apparent anger at the time he committed the offense, counsel may well have made the decision to avoid risking further damage to the case by having him testify on behalf of a dubious affirmative defense. We see nothing in the record to show that counsel violated an essential duty by abandoning pursuit of a self-defense theory of the case.
 II {¶ 11} Selman next complains that the state asked the mother whether she was aware that Selman had two prior convictions for domestic violence, even though he and the state had stipulated to those prior convictions. He claims that the only possible basis for the question, in light of the stipulation, was as "other acts" evidence in violation of Evid. R. 404(B).
 {¶ 12} We need not reach the question of whether the stipulated prior convictions for domestic violence were used as other acts evidence in violation of Evid. R. 404(B) because this case was tried to the court without a jury. The parties announced their stipulation to the court just prior to trial, so any testimony about those prior convictions would not have been a revelation to the court. *Page 6 
 {¶ 13} We also acknowledge the long-standing rule that in a bench trial the court considers only relevant material and competent evidence.State v. Post (1987), 32 Ohio St.3d 380, 384. Selman offers no argument to show that the court improperly used these prior convictions as proof that he had committed the charged offense. The state asked the mother only whether she was aware that Selman had any prior domestic violence convictions in this county (she answered "yes"), and how many (she answered "two"). Counsel objected and the state moved onto another line of questioning. The reference at trial was no more expansive than that which had been stipulated to in open court and it went into no specifics of those prior offenses beyond what the parties had previously acknowledged to the court. Selman thus fails to overcome the presumption employed in cases tried to the bench that the court did not consider the evidence for any improper purpose.
 III {¶ 14} Finally, Selman argues that there was insufficient evidence to prove the elements of domestic violence because the evidence "points to defendant's claim that he was emotionally unstable and that he contacted the police as the assaulted person." We summarily reject this assignment of error because it fails to offer an argument showing which elements of the offense of domestic violence had not been proven by the state. Instead, the argument goes to the weight of *Page 7 
the evidence, a legal concept not separately argued. See App. R. 12(A)(2); State v. Judd, Cuyahoga App. No. 89278, 2007-Ohio-6811, ¶ 45-46.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 COLLEEN CONWAY COONEY, P.J., and MARY J. BOYLE, J., CONCUR. *Page 1